IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HER, INC., *et al.*,

        Plaintiffs,

                                  Case No. C2-06-492
      vs.                            Judge Edmund A. Sargus, Jr.
                                    Magistrate Judge Norah McCann King

RE/MAX FIRST CHOICE, LLC, *et al.*,

        Defendants.

## OPINION AND ORDER[1]

    This matter is before the Court for consideration of Plaintiffs' unopposed Motion for Damages.[2] Plaintiffs HER, Inc., Real Living, Inc., Harley E. Rouda, Jr., Harley E. Rouda, Sr., and Kaira Sturdivant Rouda move the Court for an award of statutory damages for Defendants' violations of the anti-cybersquatting provision under § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d) ("ACPA"). Plaintiffs also seek attorneys' fees and costs associated with the prosecution of this case. Specifically, Plaintiffs request statutory damages in excess of $200,000, attorneys' fees in the amount of $172,355, and costs incurred. For the reasons that follow, the Motion is **GRANTED.**

---

[1] The Court issued an Opinion and Order on December 10, 2009 as Doc. No. 75, at which time and unbeknownst to the Court defendant David E. Barlow was a Chapter 11 debtor in Case No. 09-55130 in the United States Bankruptcy Court for the Southern District of Ohio. The Court enters this Opinion and Order to supersede and replace the opinion and order filed as Doc. No. 75.

[2] On July 30, 2009, the Court Ordered Defendants to respond to Plaintiffs' Motion by August 6, 2009 if they intended to do so. Doc No. 74. Defendants did not oppose or otherwise respond to Plaintiffs' Motion.

On May 2, 2008, this Court granted Plaintiffs' request for a Permanent Injunction and precluded Defendants from using domain names incorporating Plaintiffs' personal names and registered marks. It is undisputed that Defendants are and were direct competitors with Plaintiffs. Plaintiffs alleged that Barlow established a new real estate brokerage company named "IHome, Realtors" that competes directly with Plaintiffs.

Barlow allegedly sent emails to HER agents that purportedly disparaged HER and Plaintiff Harley Rouda, Jr.  Barlow registered and used the internet domain name "insiderealliving.com," which displayed the same allegedly disparaging information embedded within the "insider" e-mails. (Tr. at 172-174:19.)  Barlow registered an additional five domain names as follows: "harleyroudajr.com," "harleyerouda.com," "harleyroudasr.com,""kairarouda.com," and "kairasturdivantrouda.com." (Stipulation, Doc. 9 at 2.) When a user visited one of these five website domains, he or she would be diverted to the website of HER's competitor, RE/MAX. (Tr. at 23:1- 24:15; Pls' Exh. 8.) Defendants stipulated that there was traffic on the websites but did not agree as to the amount of traffic each website attracted. (Tr. at 172-174:19.)

The Court issued a preliminary injunction in January 2007. Thereafter, Plaintiffs requested that the Defendants transfer the domain names to Plaintiffs. Defendants refused, which caused Plaintiffs to seek a separate order from the Court mandating the transfer of the domain names. The Court granted Plaintiffs' motion in January, 2008.

The Court concluded Defendants acted with a willful, intentional, malicious and bad faith intent to profit and that Barlow's website, "www.insiderrealliving.com" was designed with a "long-term financial motive in mind." (Order, Doc. 65 at 9-13, 12.) The Court also concluded that the Defendants diverted at least some users to the website of HER's direct competitor,

2

RE/MAX, in a manner that could harm the goodwill of Plaintiffs' marks and to achieve some commercial gain. (Id.)

The Court concluded that Defendants acted intentionally with a bad faith intent to profit, and willfully and deliberately violated the ACPA and § 32 of the Lanham Act. Accordingly, Plaintiffs are entitled an award of statutory damages under 15 U.S.C. § 1125(d) and attorneys' fees, and costs under 15 U.S.C. § 1117.2.

A.    **Statutory Damages**

The ACPA authorizes a variety of remedies, including actual damages or statutory damages, attorneys' fees, injunctive relief, and transfer of the domain names. At any time before the entry of final judgment by the trial court, a plaintiff may elect to recover statutory damages in lieu of actual damages. Statutory damages, if elected, range from "not less than $1,000 and not more than $100,000" per domain name. 15 U.S.C. § 1117(d). The statutory damages provisions in the ACPA are designed to afford restitution and reparation for injury, but also to discourage wrongful conduct. *E & J Gallo Winery v. Spider Webs Ltd.,* 286 F.3d 270, 278 (5th Cir. 2002). "If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the maxima and minima." *Kiva Kitchen & Bath Inc. v. Capital Distrib. Inc.,* No. 08-20303, 2009 WL 890591 at *3 (5th Cir. April 2, 2009) (quoting *Colutnbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1194 (9th Cir. 2001)). In this case, in their Motion for Judgment, Plaintiffs elected statutory damages.

Courts award significant statutory damages under the ACPA where a defendant willfully, intentionally and maliciously acted in bad faith with intent to profit. Courts view a violation of the ACPA as particularly flagrant when the defendant is a direct competitor of a plaintiff.

3

*See, e.g., Kiva Kitchen & Bath,* 2009 WL 890591 at * 3 (affirming district court's award of $100,000 per domain name and attorneys' fees because defendant, in bad faith, diverted potential customers to its website); *Citigroup, Inc. v. Shui,* 611 F. Supp.2d 507, 513 (E.D. Va. 2009) (awarding maximum $100,000 per pirated domain name and attorneys' fees when plaintiff established that defendant's ACPA violation was "sufficiently willful, deliberate, and performed in bad faith"); *Graduate Mgmt. Admission Council v. Raju,* 267 F. Supp.2d 505, 512-13 (E.D. Va. 2003) (awarding $100,000 per domain name); *Petmed Express, <u>Inc. v. MedPets.com,</u> Inc.,* 336 F. Supp. 2d 1213, 1220-22 (S.D. Fla. 2004) (awarding $50,000 per domain name).

In its Opinion and Order permanently enjoining Defendants in this action, the Court delayed ruling on Plaintiffs' statutory damages until briefing was completed on the issue of attorneys' fees. Subsequently, Defendant Barlow filed for bankruptcy, which caused an automatic stay of this action pursuant to 11U.S.C. § 362(a) of the Bankruptcy Code. The Court administratively closed the case until Defendant Barlow's bankruptcy proceeding was dismissed. Thereafter, Plaintiffs briefed the issues related to their claims for statutory damages and attorneys' fees. Again, Defendants did not oppose or respond to Plaintiffs' contentions regarding damages and fees.

Here, the Court has already determined that Defendants exhibited bad faith in their intent to divert potential customers to the RE/MAX website. Defendants directly compete with Plaintiffs in the residential real estate business. Defendants acted with a bad faith intent to profit by registering and using the domain names associated with HER and its owners in an effort to divert users to the RE/MAX website. The Court found that Defendants' use of the domain names at issue could harm the goodwill of Plaintiffs' marks and was designed to achieve some commercial gain. Specifically, the Court determined that Barlow registered the website,

4

"www.insiderrealliving.com" intentionally with a long-term financial motive in mind.

Indeed, Defendant Barlow admitted that he registered five of the six domain names (excluding "insiderealliving.com" ) to "prove a point" to Plaintiffs. (Barlow II, Doc. 46 at 23:12-24.) Barlow testified that he hoped internet users would "Google" the personal names of the Plaintiffs and discover that Plaintiffs were "not smart enough" to register their own names, which ultimately would embarrass Plaintiffs among their peers and customers. *(Id.* at 51:14-20, 58:20-59:10) Barlow also conceded that he found it "funny" that Plaintiffs were "not smart enough . . . to register their own names." *(Id.* at 13:6-14,) Furthermore, Barlow's website, www.insiderrealliving.com, revealed the contents of the "insider" email that criticized HER and misrepresented the character and integrity of HER management. (Plfs. Ex 13.) Further, Barlow registered numerous other domain names that incorporated the names, home addresses, and home phone numbers of certain Plaintiffs to irritate and annoy them.

The Court concludes that, as a result of Defendants' willful, deliberate, bad faith intent to profit and their willful and malicious violations of the ACPA, Plaintiffs are entitled to statutory damages in the amount of $120,000. This amount reflects statutory damages in the amount of $20,000 for each of the six (6) domain names, "insidercalliving.com," "harleyroudajr.com," "harleyerouda. com," "harleyroudasr.com," "kairarouda.com," and "kairasturdivantrouda.com" Barlow knowingly registered and used with a bad-faith intent to profit and to disparage Plaintiffs, his direct competitor.

**B.    Attorneys' Fees and Costs**

A court may award attorneys' fees and costs to the prevailing party in a trademark infringement action in "exceptional cases." 15 U.S.C. § 1117(a). Section 1117(a) requires two inquiries: (1) whether the plaintiff was a "prevailing party," and (2) whether the case is

"exceptional." *Audi AG v. D'Amato,* 469 F.3d 534 (6th Cir. 2006). Although the ACPA does not define "exceptional," the Court of Appeals for the Sixth Circuit has held that "a case is not exceptional unless 'the infringement was malicious, fraudulent, willful, or deliberate.' " *Id.* at 550 (quoting *Eagles, Ltd. v. Am. Eagle Found.,* 356 F.3d 724, 728 (6th Cir. 2004)). "A finding of bad faith under the ACPA does not necessarily compel a court to find 'malicious, fraudulent, willful or deliberate' conduct. However, a court would be well within its discretion in determining that bad faith under the ACPA supports finding such conduct." *Id.* at 551.

Here, this case does not present a situation where a defendant innocently registered what he imagined to be a proper domain name but later determined that his choice caused confusion among consumers. Nor is it a case where a defendant did not know and understand the potential harm the domain registration could cause to their rightful owners. To the contrary, Defendants intentionally, willfully and maliciously registered and used the domain names with a bad faith intent to profit, thereby causing harm to Plaintiffs. Defendants used domain names incorporating Plaintiffs' trade names and marks to divert potential customers to a competitor website. Barlow testified that he registered the domain names to "prove a point" to Plaintiffs and humiliate Plaintiffs for not registering the names themselves when they claimed to be technologically savvy. Defendants registered at least seventeen domain names that incorporated either Plaintiffs' protected marks and names, or their personal information, and redirected internet users to a specific site from at least five of these seventeen domain names.

Because Defendants' actions cannot be justified as either a reasonable attempt to develop their own marks or as the result of mere confusion concerning the existence of HER's well established marks, the Court finds that Defendants acted with malicious, fraudulent, willful and deliberate intent to injury Plaintiffs and concludes that an award of attorneys' fees is appropriate.

*Id.* at 550. Plaintiffs retained counsel to protect and enforce their marks and names, and obtained permanent injunctive relief prohibiting the use of the domain names at issue in this case. Defendants, however, refused to voluntarily transfer the domain names, despite numerous requests. Because of Defendants' lack of cooperation, Plaintiffs' counsel sought the Court's intervention to compel the transfer of the domain names. This motion begat additional discovery and the need for further investigation. When asked in his post-mediation deposition why he refused to transfer the domain names, Barlow unabashedly stated, "they're mine." (Barlow Dep. II, at 60:12-14.) Under these circumstances, and without opposition by Defendants, the Court finds this case to be an exceptional one in which attorneys' fees are appropriate.

Plaintiffs incurred over $190,189.93 in legal fees and cost disbursements in this case. (See Affidavit of James B. Hadden at 111.)[3] Plaintiffs discounted this fee by 10% to account for time expended developing "secondary" claims upon which they did not focus during the litigation. Plaintiffs request, and the Court finds they are entitled to $172,356.30 plus costs under § 1117(a).

For the foregoing reasons, and without opposition of Defendants, Plaintiffs' Motion for Damages (Doc. 73) is GRANTED. The Court concludes that Plaintiffs HER, Inc., Real Living, Inc., Harley E. Rouda, Jr., Harley E. Rouda, Sr., and Kaira Sturdivant-Rouda are entitled to statutory damages in the amount of $120,000, attorneys' fees in the amount of $172,356, and costs incurred for Defendants RE/MAX and David E. Barlow's intentional, willful and deliberate violation of the anti-cybersquatting provision under § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). There is no just cause for delay.

---

3 Immediately after filing their Complaint, Plaintiffs pursued injunctive relief under Count I (violation of the ACPA), Count III, (violation of § 32 of the Lanham Act), and Count VIII (violation of the Ohio Deceptive Trade Practices Act) and defended Defendants' counterclaim. After the preliminary injunction hearing, Plaintiffs focused their attention primarily on the ACPA claim and § 32 claim, and did not actively pursue their state-based claims or the remaining federal claims.

**IT IS SO ORDERED.**

_____          _____
**Date**                                                   Judge Edmund A. Sargus, Jr.
                                                                 **United States District Court**

1566804v.vv2